# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

**UNITED STATES OF AMERICA**

**v.**  CRIMINAL NO. 2:19-00148

**JOSEPH R. ZIEGLER**

## MEMORANDUM OPINION AND ORDER

After a jury trial, Joseph R. Ziegler ("Ziegler" or "defendant") was convicted of two counts of impersonating a federal employee, in violation of 18 U.S.C. § 912. Pending before the court is the defendant's motion for new trial and judgment of acquittal. (ECF No. 89-2). The government has responded to the motion. (ECF No. 94). For the reasons expressed below, that motion is **DENIED**.

A.  *Motion for Judgment of Acquittal*

In evaluating a defendant's motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c), the court must view the evidence in the light most favorable to the government to determine if any rational trier of fact could have found the defendant guilty of the essential elements of the crime beyond a reasonable doubt. See United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997). Accordingly, defendant's convictions must be sustained if, viewed in the light most favorable to the United States, there is substantial evidence to support them. See Glasser v. United States, 315 U.S. 60, 80 (1942). In reviewing

the sufficiency of the evidence, a court does not weigh the evidence or assess the credibility of witnesses.  United States v. Arrington, 719 F.2d 701, 704 (4th Cir. 1983).  The court "must assume that the jury resolved all contradictions in testimony in favor of the Government."  United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1993).

"'[S]ubstantial evidence,' in the context of a criminal action, [is] that evidence which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'"  United States v. Newsome, 322 F.3d 328, 333 (4th Cir. 2003) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996)).  "The jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994); see also United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989) ("[T]his court is bound by the credibility choices of the jury.") (internal citations and quotations omitted).  Furthermore, "if the evidence supports different, reasonable interpretations, the jury decides which interpretation to believe."  Murphy, 35 F.3d at 148.  Therefore, a defendant challenging the sufficiency of the evidence "`must overcome a heavy burden.'"  United States v. Palomino-Coronado, 805 F.3d 127, 130 (4th Cir. 2015) (quoting United States v. Hoyte, 51 F.3d 1239, 1245 (4th Cir. 1995)).

Where, as here, a defendant argues that a jury's verdict was based on insufficient evidence, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). Count One of the indictment charged that on or about April 4, 2019, at or near Bomont, Clay County, West Virginia, and within the Southern District of West Virginia, the defendant, Joseph R. Ziegler, did falsely assume and pretend to be an officer and employee acting under the authority of the United States, that is, an Assistant United States Attorney, and acted under that authority, in that he made statements to the Clay County Sheriff's Department Officers that defendant was not required to have a driver's license to drive in West Virginia and that the Clay County Sheriff's Department Office did not have jurisdiction over defendant because defendant was an Assistant United States Attorney, in violation of Title 18, United States Code, Section 912. Similarly, Count Two of the indictment charged that on or about April 8, 2019, at or near Clay, Clay County, West Virginia, and within the Southern District of West Virginia, the defendant, Joseph R. Ziegler, did falsely assume and pretend to be an officer and employee acting under the authority of the United States, that is, an Assistant United States Attorney, and acted under that authority to demand

a thing of value, that is, a vehicle, in violation of Title 18, United States Code, Section 912.

To show a violation of 18 U.S.C. § 912, the United States had to prove four elements beyond a reasonable doubt: (1) that defendant was not an officer or employee of the United States; (2) that defendant falsely pretended to have been an officer or employee of the United States; (3) that defendant acted as such; and (4) that the defendant did so knowingly and willfully. United States v. Roe, 606 F.3d 180, 186 (4th Cir. 2010).

The relevant facts adduced at trial are as follows. Robin Justice, a 38-year employee of the United States Attorney's Office for the Southern District of West Virginia, testified that an Assistant United States Attorney (AUSA) is a federal employee. Ms. Justice testified that, in her capacity as an Administrative Officer with the United States Attorney's Office, she was involved in overseeing the human resources functions of the office. She further testified that defendant was neither an Assistant United States Attorney or a Special Assistant United States Attorney (SAUSA) in the Southern District of West Virginia and that there was no record that defendant was an AUSA or SAUSA in any other district.

Of Count One, four witnesses testified that defendant stated that he was an AUSA on April 4, 2019. These witnesses included Deputies Ryan Thomas and Michael Morris with the Clay County

4

Sheriff's Department; Lisa Murphy, Clay County's Magistrate Assistant; and Charles Rider, Clay County Magistrate. See ECF No. 99 at pp. 55-57; ECF No. 100 at pp. 43-46, 75, 77, 106 and 109. Ryan Thomas testified that defendant told him that he could get any state charges against him dropped because he was an AUSA. See ECF No. 99 at pp. 55-56. Deputy Thomas testified that he believed defendant's purpose in making those statements to him was "[t]o show authority and dominance to prevent being arrested." Id. at p. 58. According to Deputy Morris, Ziegler stated that the Clay County officers did not have "jurisdiction" to detain him and that he would get the case against him "dismissed". ECF No. 100 at pp. 43, 46. Lisa Murphy testified that Ziegler told her "I'm an Assistant United States Attorney and I should not be here." Id. at p. 75. According to Ms. Murphy, she "felt [Ziegler] was being a bit arrogant and that he was kind of doing it to be intimidating like he should not be there because he had a little bit of power." Id. at p. 77. Magistrate Rider testified that Ziegler told him something like he would have the case moved because he knew Mike Stuart, the United States Attorney for the Southern District of West Virginia. See id. at p. 109. Finally, on April 4, 2019, Jim Samples, the Clay County Prosecuting Attorney, was contacted by Deputy Morris who told Samples that Ziegler was purporting to be an Assistant United States Attorney. See id. at p. 166. Morris

5

also told Samples that Ziegler had stated that "the charges wouldn't stick or whatever if he was charged." Id.

Fran King, the owner of King's Trucking and Wrecker Service, testified that the car defendant was driving on April 4, 2019, had been towed to her business. See id. at p. 136. Ms. King testified that, on April 8, 2019, defendant came into her business to retrieve his vehicle. See id. at p. 137. When Ziegler did not provide proof of ownership for the vehicle that satisfied Ms. King, she refused to let him take his vehicle. See id. at pp. 138-40. Defendant demanded his car and told Ms. King that he did not have to have a license because he was a federal prosecutor. See id. at pp. 140, 148-49; see also Government Exhibit 4. Jim Samples testified that, on April 8, 2019, Ziegler came to see him to talk about the case against him pending in Clay County and that Ziegler told him that he was an "Assistant U.S. Attorney working - - well, he was an Assistant U.S. Attorney out of the State of Ohio specifically working here with Mike Stuart on special assignment." Id. at p. 174; see also p. 177.

As the foregoing shows and viewing the evidence in the light most favorable to the government, the court finds there was sufficient evidence to support the jury's verdict. Defendant's motion for judgment of acquittal is DENIED.

B.  *Motion for a New Trial*

Pursuant to Fed. R. Crim. P. 33, "[o]n a defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require."  When the motion attacks the weight of the evidence, the court's authority is broader than it is in deciding a motion under Fed. R. Crim. P. 29(c).  See United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985).  In deciding a Rule 33 motion, the district court is not constrained by the requirement that it view the evidence in the light most favorable to the government.  See id.  Accordingly, it may weigh the credibility of witnesses.  See id.  Despite this broad discretion, the trial court should exercise it "sparingly, and a new trial should be granted only when the evidence weighs heavily against the verdict."  Id. at 1486.

As noted above, the verdict here was not against the weight of the evidence.  However, defendant raises a number of other issues which, according to him, require that the court grant his motion for a new trial.  The court considers each in turn.

1.  Waiver of Right to Counsel

Defendant argues that his waiver of his right to counsel was not knowing and intelligent because he allegedly suffers from unspecified mental and physical disabilities and had been denied certain medication.  He also contends that the court should have ordered a mental evaluation.

7

In a pretrial hearing, held on August 6, 2019, defendant stated that he wished to represent himself. His counsel had previously filed a written motion asking that defendant be allowed to represent himself going forward. See ECF No. 34.

"[A] criminal defendant has a Sixth Amendment right to self-representation." United States v. Bernard, 708 F.3d 583, 588 (4th Cir. 2013); see also Faretta v. California, 422 U.S. 806, 819 (1975). "[T]he right to self-representation cannot be exercised without first eliciting a valid waiver of the right to counsel from the defendant." United States v. Singleton, 107 F.3d 1091, 1103 (4th Cir. 1997); see also United States v. Stafford, 489 F. App'x 673, 674 (4th Cir. 2012) ("An assertion of the right to self-representation must be: (1) clear and unequivocal; (2) knowing, intelligent, and voluntary; and (3) timely."). "Self-representation is fraught with dangers and disadvantages." United States v. King, No. 5:10-HC-2009-FL, 2013 WL 6330639, *3 (E.D.N.C. Dec. 5, 2013); cf. Faretta v. California, 422 U.S. 806, 835 (1975) (noting that a criminal defendant who chooses to proceed pro se may be allowed to do so only if he knowingly and intelligently waives the benefits of counsel).

However, the "right to self-representation is not absolute, and the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's

8

interest in acting as his own lawyer." Bernard, 708 F.3d at 588 (internal quotation marks omitted). Ultimately, "[t]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Johnson v. Zerbst, 304 U.S. 458, 464 (1938); see also United States v. Singleton, 107 F.3d 1091, 1097 (4th Cir. 1997).

Moreover, while a trial court must determine if a waiver of counsel is knowing and intelligent, no particular interrogation of the defendant is required, so long as the court warns the defendant of the dangers of self-representation such that "'his choice is made with his eyes open.'" United States v. King, 582 F.2d 888, 890 (4th Cir. 1978) (quoting Faretta, 422 U.S. at 835); see also Iowa v. Tovar, 541 U.S. 77, 88 (2004) ("We have not . . . prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel."). As our appeals court has stated:

> the court must assure itself that the defendant knows the charges against him, the possible punishment and the manner in which an attorney can be of assistance. The defendant must be made aware that he will be on his own in a complex area where experience and professional training are greatly to be desired.

King, 582 F.2d at 890 (internal citations omitted).

"A trial court evaluating a defendant's request to represent himself must traverse a thin line between improperly allowing the

9

defendant to proceed pro se, thereby violating his right to counsel, and improperly having the defendant proceed with counsel, thereby violating his right to self-representation." Fields v. Murray, 49 F.3d 1024, 1029 (4th Cir. 1995) (en banc) (internal quotation marks and alterations omitted).

In considering defendant's request to exercise his right to self-representation, the court held an in camera discussion with defendant and his counsel. After doing so, the court questioned defendant in open court regarding his legal experience, his understanding of the charges, and his familiarity with the Federal Rules of Evidence and Federal Rules of Criminal Procedure. Defendant stated that he had significant legal experience representing himself in both criminal and civil matters. Defendant confirmed that he understood the nature of the charges against him, the legal proceedings, and the penalties to which he would become exposed upon conviction. The court advised the defendant that he should not waive his right to counsel. However, defendant insisted on waiving that right. An earlier case in which defendant had represented himself but later argued successfully that his waiver did not comply with certain requirements under state law was mentioned. See People v. Ziegler, 1998 WL 1988750 (Ct. Appeals. Mich. Nov. 24, 1998). Given Ziegler's actions in the Michigan case, the court made

further inquiry of defendant to make sure that defendant's waiver was knowing and intelligent.

Notably, defendant did not raise the issue of mental competence until after the jury returned its guilty verdict. Furthermore, on the morning of trial, the government brought up the issue of defendant's competence to represent himself.

> Government: Your Honor, if I may, respectfully, we request that the Court just confirm with Mr. Bungard [standby counsel] that he believes his client is competent to represent himself.
>
> Court: Well, do you want to address that, Mr. Bungard? I think - - you're putting Mr. Bungard on the spot here, Mr. Hasselblad. If you're comfortable answering the question, Mr. Bungard, you can. You don't have to.
>
> Bungard: Your Honor, I would say as part of your decision to let him represent himself, I think the Court has already found that Mr. Ziegler is competent to the extent he's represented and he knows how courts work. He knows how the system operates. He's given you a list of his experience in the past. He's very clear about wanting to proceed on his own. I would ask the Court to give him his wish.
>
> Court: Well, I, I - - I don't find any reason to refer Mr. Ziegler for any kind of a study or anything to determine whether he's competent or not. It seems to me like he, he's not making a very wise decision here, but he's competent to make it, and the Court respects that decision.

ECF No. 99 at pp. 13-14.

In <u>United States v. Bernard</u>, 708 F.3d 583, 585 (4th Cir. 2013), a defendant appealed "the district court's decision

11

allowing him to represent himself at trial despite his questionable mental capacity." In rejecting defendant's claim, the court noted that "[t]he competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent oneself." Id. (quoting Godinez v. Moran, 509 U.S. 389, 399 (1993)). The Bernard court explained:

> [T]he district court shall conduct a competency hearing and/or order the defendant to undergo a psychiatric evaluation "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent. . . ." 18 U.S.C. § 4241(a). Whether "reasonable cause" exists is a question left to the sound discretion of the district court. See United States v. Mason, 52 F.3d 1286, 1289 (4th Cir. 1995). Reasonable cause may be established through "evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's competence." Id. at 1290. Notably, the presence of some degree of mental illness is not to be equated with incompetence. . . ." Hall v. United States, 410 F.2d 653, 658 (4th Cir. 1969).

Id. at 592-93.

A review of the record, including his filings with the court and actions during the trial, undermine Ziegler's argument that he was incompetent to waive his right to counsel. See id. at 593 ("In this case, we cannot say Appellant's behavior during his trial called into question the district court's decision-making concerning Appellant's competency to stand trial and waive counsel."). For this reason, defendant's argument that he is entitled to a new trial for this reason fails.

2. <u>Voir Dire</u>

Defendant argues that the court erred in refusing to ask certain of defendant's proposed voir dire questions. Defendant's proposed voir dire consisted of questions like the following:

1. Has anyone read the U.S. Constitution?

2. Does anyone support the 15-year Afghanistan war?

3. Does anyone know that the U.S. military claims they are there to guard heroin fields so it doesn't fall into wrong hands and because it is needed for American pharasedial [sic] companys [sic]?

4. Does anyone know that the U.S. Supreme Court ruled in <u>Cohen v. California</u> that Fuck is a protected speech, and that anyone can wear coat in any U.S. courthouse that says "Fuck The Draft". (It's published).

8. What kind of music do you listen to?

13. Can anyone name the three judicial branchs [sic] of the US Government in US Const?

20. Did anyone start smoking cigarettes because of peer pressure?

ECF No. 55.

Of voir dire, the United States Court of Appeals for the Fourth Circuit stated:

> "Voir dire plays an essential role in guaranteeing a criminal defendant's Sixth Amendment right to an impartial jury," in that "it enables the court to select an impartial jury and assists counsel in exercising peremptory challenges." <u>United States v. Lancaster</u>, 96 F.3d 734, 738 (4th Cir. 1996) (en banc) (internal quotation marks and alterations omitted).

13

"Despite its importance," however, "the adequacy of voir dire is not easily subject to appellate review." Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S. Ct. 1629, 68 L. Ed. 2d 22 (1981) (plurality opinion).

> The trial judge's function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions. In neither instance can an appellate court easily second-guess the conclusions of the decisionmaker who heard and observed the witnesses.

Id. (citations omitted). Appellate courts thus accord great deference to the district court's decisions about the conduct of voir dire. See Lancaster, 96 F.3d at 738. "Although a trial court's discretion is not without limits, it is a rare case in which a reviewing court will find error in the trial court's conduct of voir dire." Sasaki v. Class, 92 F.3d 232, 239 (4th Cir. 1996) (internal quotation marks omitted).

United States v. Jeffery, 631 F.3d 669, 673 (4th Cir. 2011). The Supreme Court has confirmed the wide discretion accorded to a district court in conducting voir dire. See Mu'Min v. Virginia, 500 U.S. 415, 427 (1991) ("[O]ur own cases have stressed the wide discretion granted to the trial court in conducting voir dire . . . in other areas of inquiry that might tend to show juror bias."). A "[d]istrict court need not pursue a specific line of questioning on voir dire, provided the voir dire as a whole is reasonably sufficient to uncover bias or partiality in the venire." United States v. Lancaster, 96 F.3d 734, 739-40 (4th Cir. 1996).

14

"[T]rial courts are given broad discretion as to the questions to be asked." United States v. Barber, 80 F.3d 964, 967 (4th Cir. 1996) (internal citations and quotation omitted). Therefore, the Fourth Circuit has "never suggested that a district court is obligated to ask each question proposed by a defendant." United States v. Heater, 63 F.3d 311, 326 (4th Cir. 1995). In this case, the court conducted an extensive voir dire aimed at discovering bias and partiality. Defendant fails to explain how his proposed questions were "appropriate for ferreting out relevant prejudices." Barber, 80 F.3d at 967.

As for defendant's argument that the court erred by failing to ask if the parties were satisfied with the jury, defendant does not cite any authority which mandates such a question be asked nor does he explain what, if any, objection he would have raised. With one exception, the court granted all defendant's challenges for cause. Defendant then used one of his peremptory strikes to remove that potential juror. Nor did Ziegler object to any of the government's peremptory strikes.

For all these reasons, the court finds no merit in defendant's argument that errors in the voir dire process entitle him to a new trial.

   3.   Malicious/Selective Prosecution

Defendant maintains that a new trial is merited on the grounds of malicious prosecution and selective prosecution.

15

Defendant argues that he was prosecuted because of an alleged disability. As the government notes, malicious prosecution is a tort and not a defense to criminal prosecution. See United States v. Christy, 883 F. Supp.2d 1040, 1041 (D.N.M. 2012). With respect to defendant's argument that he was selectively prosecuted, Federal Rule of Criminal Procedure 12(b)(3)(A)(iv) requires that claims for selective or vindictive prosecution be raised by pretrial motion. "[F]ailure to raise the selective prosecution claim before trial, . . . constitutes a waiver of such claim." United States v. Edwards, 188 F.3d 230, 237 (4th Cir. 1999). Ziegler failed to raise his selective prosecution claim prior to trial and, accordingly, it is waived. Even if defendant's selective prosecution claim were not forfeited, for the reasons cited by the United States, see ECF No. 94 at pp. 9-11, the claim fails on the merits.

    4.   <u>Failure to Secure Witnesses</u>

According to defendant, his Confrontation Clause and other rights were violated because he was allegedly unable to subpoena certain witnesses. The record in this case is clear that the court did not limit defendant's ability to subpoena witnesses on his behalf if he possessed the requisite funds to do so. However, to the extent that defendant sought subpoenas at government expense, the court did require that Ziegler demonstrate "the necessity of the witness's presence for an

16

adequate defense". Federal Rule of Criminal Procedure 17(b). When defendant could not make such a showing, his request was denied. See ECF No. 74.

5. Jury Instructions

Defendant challenges the district court's jury instructions for (1) failing to define reasonable doubt; (2) failing to instruct on defendant's state of mind; and (3) instructing the jury as to the prosecution's theory of the case. In evaluating jury instructions, the appellate court reviews "the entire jury charge to determine whether the jury was properly instructed on the elements of the offenses." United States v. Herder, 594 F.3d 352, 359 (4th Cir. 2010). "In other words, we must determine `whether, taken as a whole, the instruction fairly states the controlling law.'" United States v. Chikvashvili, 859 F.3d 285, 291 (4th Cir. 2017) (quoting United States v. Cobb, 905 F.2d 784, 789 (4th Cir. 1990)).

"The practice of defining reasonable doubt in the charge to the jury has been widely condemned." United States v. Moss, 756 F.2d 329, 333 (4th Cir. 1985). Therefore, defendant's argument that the court should have defined reasonable doubt for the jury is without merit. Likewise, the court's instructions regarding the requisite mental state were appropriate. Defendant's final claim of error in the court's jury instructions is also without merit.

17

C. *Conclusion*

For the foregoing reasons, defendant's motion for judgment of acquittal and motion for a new trial is **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record, to the United States Marshal for the Southern District of West Virginia, and to the Probation Office of this court. Mr. Bungard should provide a copy to defendant.

IT IS SO ORDERED this 13th day of November, 2019.

ENTER:

David A. Faber
Senior United States District Judge